01
02
03
04
05
06
07             UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
08                        AT SEATTLE

09  JOE C. TAPIA,                         )
                                          )
10         Plaintiff,                     )   Case No. C04-2086-JPD
                                          )
11      v.                                )
                                          )
12  JO ANNE B. BARNHART, Commissioner     )   ORDER
    Social Security Administration,       )
13                                        )
           Defendant.                     )
14  _____)

15      Plaintiff Joe C. Tapia proceeds through counsel in his appeal of a final decision of the

16  Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner

17  denies plaintiff's application for Supplemental Security Income ("SSI") and Disability

18  Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act after a hearing

19  before an Administrative Law Judge ("ALJ"). For the reasons set forth below, the

20  Commissioner's decision is reversed and remanded for further proceedings.

21                      **I.  FACTS AND PROCEDURAL HISTORY**

22      Mr. Tapia is a Vietnam war veteran suffering from depression, back injuries, knee

23  arthritis, hearing loss, cognitive problems, hepatitis C, and post traumatic stress disorder

24  ("PTSD"). Plaintiff filed an application for DIB and SSI on July 17, 2001, with a protective

25  filing date of July 10, 2001. AR 118-21, 155. His alleged onset date was December 1, 2000.

26  AR 155. His application and subsequent request for reconsideration were denied. AR 92-99.

ORDER
PAGE -1

01 Plaintiff had a hearing before an ALJ, but in a decision dated October 3, 2003, was found not
02 to be disabled for purposes of the SSA. AR 30. The Appeals Council denied his appeal on
03 September 7, 2004. AR 4. The ALJ's decision therefore became the final decision of the
04 Commissioner for purposes of this Court's review.
05     Plaintiff timely filed a civil action in this Court on October 5, 2004. Dkt. No. 1.
06 Pursuant to 28 U.S.C. § 636, the parties have consented to have this matter decided by the
07 undersigned United States Magistrate Judge. Dkt. No. 15.

## II.  JURISDICTION

09     The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C.
10 §§ 405(g), 1383(c)(3).

## III.  STANDARD OF REVIEW

12     The district court may set aside the Commissioner's denial of social security benefits
13 when the ALJ's findings are based on legal error or not supported by substantial evidence in
14 the record as a whole. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Smolen v. Chater*, 80 F.3d 1273,
15 1279 (9th Cir. 1996) (internal citations omitted). Substantial evidence is defined as more than
16 a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind
17 might accept as adequate to support a conclusion. *Smolen,* 80 F.3d at 1279. The ALJ is
18 responsible for determining credibility, resolving conflicts in medical testimony, and for
19 resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the
20 evidence is susceptible to more than one rational interpretation, it is the Commissioner's
21 conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)
22 (quoting *Smolen*, 80 F.3d at 1292).
23     If the court determines that the ALJ erred, the court has discretion to remand for
24 further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.
25 1990). The court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

## IV.  EVALUATING DISABILITY

As claimant, Mr. Tapia bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his impairments are of such severity that not only is he unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant does so, then at step two, the claimant must establish that he has one or more medically severe impairments or combination of impairments that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets one of the Listings for the required twelve-month duration requirements is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform his past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On October 3, 2003, the ALJ issued his decision, finding, among other things:

1. The claimant met the disability insured status requirements of the Act on July 10, 2001, the alleged onset date, and he has sufficient quarters of coverage to remain insured at least through June 30, 2006.

2. The clamant has engaged in substantial gainful activity since February 1, 2003. He did not perform substantial gainful activity from the alleged onset date through January 31, 2003.

3. The claimant has degenerative disc disease; post-traumatic stress disorder (PTSD), and alcohol dependence and abuse. These impairments are severe, but they do not meet or equal the criterial of any of the impairments listed in Appendix 1, Subpart P, Regulations, No. 4.

4. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record.

5. The claimant retains the residual functional capacity to perform light work. He can stand/walk 4 hours in an 8-hour workday, in 30 minute

ORDER
PAGE -4

or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets one of the Listings for the required twelve-month duration requirements is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform his past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On October 3, 2003, the ALJ issued his decision, finding, among other things:

1. The claimant met the disability insured status requirements of the Act on July 10, 2001, the alleged onset date, and he has sufficient quarters of coverage to remain insured at least through June 30, 2006.

2. The clamant has engaged in substantial gainful activity since February 1, 2003. He did not perform substantial gainful activity from the alleged onset date through January 31, 2003.

3. The claimant has degenerative disc disease; post-traumatic stress disorder (PTSD), and alcohol dependence and abuse. These impairments are severe, but they do not meet or equal the criterial of any of the impairments listed in Appendix 1, Subpart P, Regulations, No. 4.

4. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record.

5. The claimant retains the residual functional capacity to perform light work. He can stand/walk 4 hours in an 8-hour workday, in 30 minute

increments, and sit for 6 hours in a workday. He can climb stairs occasionally, but not ladders, ropes or scaffolds. He can occasionally stoop, kneel, and crouch, but not crawl. He can perform simple, repetitive tasks, and occasionally interact with the public and co-workers.

6. The limitations imposed by the claimant's residual functional capacity prevent him from performing his past relevant work.

. . .

8. Based on the claimant's residual functional capacity, age, education, and work experience, 20 C.F.R. §§ 404.1569, 416.969, and Rules 202.13 or 202.14 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

9. Although the claimant is unable to perform the full range of light work, he is capable of other work that exists in substantial numbers. Such work includes positions such as wire worker (DOT 728.684-022), with 11,502 state jobs; small products assembler (DOT 706.684-022), with 2,000 state jobs; and meat trimmer (DOT 525.687-07), with 3000 jobs in the state. A finding of "not disabled" is therefore reached within the framework of the above-cited rules.

10. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

AR 29-30.

## VI. ISSUES ON APPEAL

Mr. Tapia essentially raises four issues on appeal:

A. Did the ALJ err when he concluded that the plaintiff was engaged in substantial gainful activity after February 1, 2003, when plaintiff began to work at a homeless center, and did so for the next four months?

B. Did the ALJ err by finding that certain impairments were not severe?

C. Did the ALJ err in evaluating the plaintiff's RFC by either failing to credit treating physician's testimony appropriately or crediting plaintiff's testimony correctly?

D. Did the ALJ err with respect to consideration of the plaintiff's Veterans Administration disability?

ORDER
PAGE -5

# VII. DISCUSSION

A. <u>The Plaintiff Was Engaged in Substantial Gainful Activity as of February 2003.</u>

The ALJ found that plaintiff engaged in substantial gainful activity beginning in February 2003. AR 22. Plaintiff argues that his work from February 2003, until May 2003, AR 18, at a service organization for the homeless was not substantial gainful activity because it was done under "special conditions."[1] Dkt. No. 9 at 5. He argues that, because he had significant problems on the job and would not have been able to perform the job on a sustained basis without the help he received from others, his work was conducted under special conditions. Dkt. No. 9 at 6. The Commissioner contends that the work was substantial gainful activity, but fails to respond to plaintiff's "special conditions" argument.

"Substantial gainful activity is work that is both substantial and gainful[.]" 20 C.F.R. §§ 404.1572, 416.972. It is work activity that involves doing significant physical or mental activity, even if it is done on a less than full time basis. *Id.* at (a). It must also be activity that is ordinarily done for pay or profit. *Id.* at (b). If a claimant is able to engage in substantial gainful activity he will not be found to be disabled. 20 C.F.R. §§ 404.1571, 416.971.

The regulations also provide, however, that work may be done under certain "special conditions that take into account [one's] impairment" and that such special conditions may include situations in which the claimant "require[s] and receive[s] special assistance from other employees." 20 C.F.R. §§ 404.1573(c), 416.973(c). The regulations further provide that

---

[1] Plaintiff also argues in his opening brief that his four months of work was not substantial gainful activity because it was within the trial work period allowed under 20 C.F.R. § 404.1592 and that it was "unsuccessful." Following defendant's assertion that that trial period did not apply to plaintiff because he had never been found to be disabled (the provision cited applies only to persons already found to be disabled who wish to test their ability to work), Dkt. No. 12 at 5-6, however, plaintiff appears to have conceded his trial period argument in his Reply. Dkt. No. 14 at 2-3.

ORDER
PAGE -6

work will not be considered "substantial gainful activity" if it is performed "under special conditions" that "take into account [the applicant's] impairment." *Id.*

In this case, the ALJ's determination that Mr. Tapia had engaged in substantial gainful activity is supported by substantial evidence. First, the plaintiff testified that he earned $294.00 a week at his job with the First Avenue Service Center. This income exceeds the regulations' threshold figure necessary to constitute a finding of substantial gainful activity. AR 21 (citing 20 C.F.R. § 404.1574); AR 41. The ALJ also cited plaintiff's testimony at the 2002 hearing which demonstrated that he was capable of handling his job as a receptionist, answering up to three lines and supervising volunteers without the assistance of others. The ALJ acknowledged plaintiff's testimony that there were days he had to rely on others to assist him, but concluded that this occurred "relatively infrequently" and that he was generally capable of handling the work without any special accommodations. AR 22. Indeed, Mr. Tapia testified that no special accommodation had been made for him at work. AR 42. The ALJ also noted that plaintiff's testimony as to his ability to handle the work shifted, but only upon questions of a leading nature by his attorney. AR 22. These observations are also supported by the record.

Finally, the ALJ noted that plaintiff had sustained an injury to his leg that led him to rely temporarily on others in order to perform his work. AR 22. He further observed that the injury was not expected to last for twelve months and that there was no evidence to suggest it permanently affected his ability to perform the job. AR 22. Because of these findings, the ALJ found that plaintiff had engaged substantial gainful activity beginning in February 2003, and found him not disabled beyond this time period. AR 22. The ALJ's decision for the period after February 2003 was based on substantial evidence and is affirmed. This, however, does not impact whether Mr. Tapia was disabled from his alleged onset date of December 1, 2000, through February 1, 2003. The balance of this Order is directed to that period.

B. <u>The ALJ Did Not Err in Determining that Certain of Plaintiff's Impairments Were Not Severe.</u>

At step two, the ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease, PTSD, and alcohol dependence and abuse. AR 22, 29. Plaintiff argues that the ALJ failed to find his hernia pain, hearing loss, cognitive problems, and hepatitis C to be severe impairments and that his failure to use them in his disability determination was legal error. Dkt. No. 9 at 6-7. The Commissioner responds that plaintiff failed to carry his burden of proving that the foregoing impairments were severe and asserts that the ALJ's determination is supported by substantial evidence. Dkt. No. 12 at 6-7.

Step two of the sequential evaluation process requires a claimant to prove that he has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basic work activities.[2] 20 C.F.R. §§ 404.1521(a), 416.921(a). When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1. Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id.* In this case, the ALJ's decision to find plaintiff's hernia pain, hearing loss, and cognitive problems non-severe impairments are supported by substantial evidence in the record. Because this Court is remanding this matter for further proceedings principally based on issues involving the impact of PTSD, the Commissioner will also be directed to consider further the testimony that Mr. Tapia provided regarding a need for naps as a result of medication for hepatitis C and the cumulative impact, if any, of all of his non-severe impairments.

---

[2]Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

ORDER
PAGE -8

1. Hernia Pain

Plaintiff's medical records indicate that he had two hernia operations in 2001 and that he recovered from them "well." AR 349. A year later, plaintiff complained of a "pulling and burning sensation that occurs when walking and going up stairs, as well as occasionally at rest." AR 583-84. He stated, however, that the prescription provided from the Veterans Administration Hospital (the "VA") helped with the pain and that the VA refilled it. AR 583-84. Plaintiff testified that after the surgery, he felt like it had "helped [him] out quite a bit." AR 57. Plaintiff did not indicate that his hernia-related pain impaired his ability to perform basic work functions, and his performance as a receptionist bears this out. *See, e.g.,* AR 52. In light of these facts, the ALJ's conclusion that plaintiff's hernia-related pain was not "chronic and ongoing" is supported by substantial evidence and must be upheld. AR 25.

2. Hearing Loss

The ALJ also found that plaintiff's hearing loss did not constitute a severe impairment. AR 23, 25. VA medical records indicate that plaintiff suffered from bilateral hearing loss and tinnitus, and that this led to some "diminished conversational hearing with the need to repeat questions." AR 346-47. The medical report also indicates plaintiff was unable to hear "finger rubbing." *Id.* Plaintiff, however, also testified to working as a receptionist, including answering telephones, without any accommodations or serious problem. AR 41-43, 59-63. The ALJ noted plaintiff's hearing loss, in particular the 10% disability the VA found as a result of his tinnitus, but determined that the overall evidence did not show any "significant problem communicating" and that therefore it was not a severe impairment. AR 25-26. While different interpretations of plaintiff's condition are possible, substantial evidence supports the ALJ's finding, and on that basis it must be upheld.

3. Cognitive Problems

Plaintiff has also asserted that his cognitive problems constituted a severe impairment. Dkt No. 9 at 7. He relies on the opinion of psychiatrist Diane C. Stein, M.D., who noted that

ORDER
PAGE -9

his "low average intelligence, learning disabilities, and eighth grade education have [ ] interfered with his making an adequate vocational adjustment." AR 297. The ALJ adopted portions of that opinion, which ultimately concluded that plaintiff has "the ability to understand, remember, and carry out simple and complex job instructions." He also noted plaintiff's statements that he has had no difficulty understanding or carrying out such instructions in the past. AR 24, 298. Plaintiff also testified that he required assistance from others to take his phones on a daily basis, but that he could sometimes handle the load when he worked hard at it. AR 59-60. In light of these facts, the ALJ's determination that plaintiff's cognitive problems were not severe is supported by substantial evidence.

### 4. Hepatitis C

Finally, plaintiff also challenges the ALJ's failure to find his hepatitis C a severe impairment and argues that he suffers severe fatigue as a result of that disease. Dkt. No. 9 at 7. The Commissioner, however, points out that plaintiff's testimony attributes the alleged fatigue to side effects from his medication, not to hepatitis. AR 57, 50. Regardless of the source, plaintiff testified about his fatigue and the need to take naps for an hour or two each day. AR 42. The ALJ did not address this issue directly. On remand, the ALJ should do so.

### 5. Cumulative Impact

Although the findings by the ALJ that the plaintiff's hernia pain, hearing loss, and cognitive problems were not severe are supported by substantial evidence and must therefore be affirmed, the ALJ failed to consider the cumulative effects of these impairments, as well as the impact of the plaintiff's hepatitis C, and effects of medication on the claimant's ability to perform basic work functions. *Smolen,* 80 F.3d at 1290. On remand, the ALJ is directed to consider these issues.

      C.    <u>The ALJ Erred in His RFC Evaluation by Failing to Properly Evaluate Plaintiff's Examining and Treating Physicians' Evidence</u>.

Plaintiff argues that the ALJ's determination of his RFC was in error because he improperly rejected testimony from his examining and treating physicians. Dkt. No. 9 at 8. The Commissioner responds that the ALJ properly considered the physicians' respective testimony and that, to the extent any testimony was rejected, it was done so in a manner consistent with what the law requires. Dkt. No. 12 at 12-13.

The ALJ defined Mr. Tapia's RFC as follows:

> The claimant retains the residual functional capacity to perform light work. He can stand/walk 4 hours in an 8-hour workday, in 30 minute increments, and sit for 6 hours in a workday. He can climb stairs occasionally, but not ladders, ropes or scaffolds. He can occasionally stoop, kneel, and crouch, but not crawl. He can perform simple, repetitive tasks, and occasionally interact with the public and co-workers.

AR 29.

With the potential exception of analyzing the cumulative impact of the non-severe impairments and the issue of plaintiff's need for naps discussed above, the ALJ's RFC analysis regarding physical limitations is fully supported by the record. Drs. Bernardez-Fu, Smith, and Wilson with the State Disability Determination Service ("DDS") reviewed medical records and opined that, as to physical limitation issues, Mr. Tapia could perform light work with occasional postural movements. Substantial evidence exists in the record to support the ALJ's physical RFC evaluation.

The primary thrust of plaintiff's argument with the ALJ's RFC analysis relates to the role of PTSD. The plaintiff claims that the ALJ paid inadequate deference to the opinions of his treating physicians, especially his psychologist, John Slattery, Ph.D., and Drs. Stein and Hohenegger. The Commissioner argues that the decision incorporates a substantial portion of the medical opinions provided by these treating physicians. In addition, the Commissioner argues that Mr. Tapia's RFC evaluation incorporates specific PTSD-induced limitations by limiting Mr. Tapia only to occasional interactions with the public and co-workers.

ORDER
PAGE -11

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Id.* at 761-62 & n.7. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick*, 157 F.3d at 725. When rejecting uncontraverted medical opinions, the ALJ must explain his reasons for rejecting them in proper detail. *Embrey v. Bowen*, 849 F.2d , 418, 422 (9th Cir. 1988).

Similarly, an ALJ may reject a treating physician's opinion when it is controverted by other medical opinions by providing "specific and legitimate" reasons based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Slattery is a psychologist who treated Mr. Tapia for an extended period of time. His notes include: "severe PTSD;" "chronic PTSD;" and "PTSD remains disabling." AR 401-08. In his psychological evaluation dated February 5, 2001, Dr. Slattery diagnosed plaintiff with chronic and severe PTSD and major depression. AR 588. He also wrote: "[v]et unable to sustain cooperative, positive relationships with supervisors because of irritability, negativity, suspiciousness of others." AR 589. In the evaluation, Dr. Slattery checked boxes indicating "severe inability to relate appropriately to co-workers and supervisors; ability to respond appropriately and tolerate the pressures and expectations of a normal work setting." AR 589. Finally, Dr. Slattery and Dr. Bokan (Mr. Tapia's treating psychiatrist) concluded:

> Mr. Tapia's PTSD is especially marked by anxiety, negative expectations and severe avoidance, which in the past has led to substance abuse problems for Mr. Tapia (currently in remission) and to chronic homelessness.

AR 591.

Dr. Stein was an [examining] psychiatrist who issued a report dated August 30, 2001. In her report, Dr. Stein opined in part:

> Claimant continues to manifest dejection and hopelessness. He also gives a full history consistent with Post Traumatic Stress Disorder. His symptoms include flashbacks, hypervigilance, hyperarousal, and nightmares. He also manifests continued paranoid ideation, and has, at times, carried a knife and "I watch my back."
>
> . . . .
>
> Claimant has a history of blowing up at a supervisor and walking off the job. He has also withdrawn from more than one job by simply calling in sick and not returning. He attributes this primarily to his substance abuse, but it has also happened, I believe, in the context of becoming fearful with paranoid ideation.
>
> . . . .
>
> Unless claimant has a more robust response to a psychoactive medication regime, it is unlikely that his condition will change in the next 12 months. Recovery for this man will mean a long (greater than one year) multifaceted rehabilitation program. With better remission of his psychiatric symptoms, and continued sobriety, he would be a candidate for vocational rehabilitation.
>
> . . . .
>
> Claimant has the ability to understand, remember, and carry out simple and complex job instructions. He reports no such difficulty understanding or carrying out job instructions in the past. Unless claimant's paranoid ideation and post-traumatic stress symptomatology is alleviated, it is likely that he will continue to have difficulty with supervisors, co-workers, and the public.

AR 295-98.

Dr. Hohenegger, an examining psychologist, opined:

> There is a lack of positive expectation for future events, as well as moderate restricted range of affect. Evidence for hypoarousal is indicated by sleep disturbance, occurring one or two times per week. There is evidence of irritability, particularly in social settings which cause Mr. Tapia to be moderately severe with respect to vigilance. He does report difficulties in concentration. . . . These symptoms are clinic important. They do indicate that Mr. Tapia shows symptoms of posttraumatic stress disorder secondary to traumas experience both before, as well as during active duty U.S. Army on an

ORDER
PAGE -13

> equal basis; there is evidence of alcohol, polysubstance abuse which occurred prior to Mr. Tapia's entering U.S. Army, continued, during, as well as after leaving Army up until 1999, which has contributed in equal part to his depression. The overall impact of Mr. Tapia's present psychological distress would in all likelihood impact his employability at least moderately, if not more. He does remain competent to handle his own finances by report.

AR 450.

As evident from the above, Mr. Tapia has significant problems associated with PTSD. The ALJ's RFC analysis, however, as it deals with the PTSD issue, is limited to the last sentence: " [h]e can . . . occasionally interact with the public and co-workers."

When the Medical Expert ("ME") was testifying, he acknowledged being unable to evaluate decompensation with respect to the 12.04 and 12.06 Listings for Affective and Anxiety Disorders. AR 72. In order to determine if a claimant meets the 12.04 or 12.06 Listing, an ALJ must explore whether the claimant meets certain combinations of the respective Listing's requirements. While not always necessary to meet or equal one of these Listings, a finding that claimant suffered "[r]epeated episodes of decompensation, each of extended duration," is one way the Listing can be met. 20 C.F.R. Pt. 404, Subpt. p, App. 1, §§ 12.04(B)(4), 12.06(B)(4). In this case, the ALJ attempted to determine whether plaintiff satisfied this requirement, but the ME "did not quite know how to evaluate [them]." AR 72. The ME's inability to evaluate this criteria casts doubt on the reliability of his testimony as it relates to the Listing, and the ALJ's reliance on that testimony. The ALJ should recall the ME on remand and obtain more reliable testimony regarding whether plaintiff met the 12.04 and 12.06 Listing.

When the Vocational Expert ("VE") was asked to identify possible jobs in the economy, the ALJ framed a hypothetical including, "occasional contact with the public; occasional co-workers." AR 76. The VE asked the ALJ to define the word "occasional" and the ALJ responded, "[o]ccasional is . . . he could have contact up to one-third of a workday. Normally it is not done in a sustained fashion but . . . would be from time to time." AR 71.

ORDER
PAGE -14

It is apparent that in evaluating the plaintiff's RFC, the ALJ failed to evaluate properly the role of PTSD outlined by Mr. Tapia's physicians, and provided inadequate reasons for rejecting their opinion. The ALJ discounts the testimony in part, based on his conclusion that Dr. Slattery used a "check-the-box" form. AR 24. An ALJ may reject medical opinions based upon check-the-box type reports that lack a narrative explanation for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995) (internal citations omitted). The court's main concern in connection with this inquiry centers around the search for specific justifications and rationale for a conclusion, as opposed to conclusory statements, or a mere reiteration of a claimant's subjective complaints. *Id.* Courts are not obligated to accept any treating physician's opinion that is brief and conclusory in form and that offers few clinical findings to support its conclusions. *Magallenes*, 881 F.2d at 751. While Dr. Slattery's psychological evaluation included a check-the-box form, however, his evaluation was not limited to such a form. Indeed, his non-check-the-box evaluations of Mr. Tapia were very consistent. The ALJ's decision to discount Dr. Slattery's opinion as a "check-the-box" analysis was error.

The ALJ also improperly rejected Dr. Stein's analysis. Dr. Stein also reported plaintiff's tendency to blow up at supervisors, his struggle to deal with others, and his difficulty handling stress. AR 58-64, 297. Dr. Stein noted these tendencies were related to plaintiff's PTSD and paranoid ideation. AR 297-98.

Although the ALJ states that he gave Dr. Stein's opinion "a fair degree of weight because it is consistent with the medical evidence and the claimant's reported activities," he rejected Dr. Stein's diagnosis of plaintiff having "psychotic features." AR 24. The ALJ did so because he felt it relied solely on the plaintiff's vague assertions and because it was inconsistent with the overall medical evidence. AR 24. Outside the report in question there is nothing cited by the Commissioner that refutes Dr. Stein's diagnosis. Indeed, the Commissioner does not even assert that. Dkt. No. 12 at 14. Instead, the ALJ states that Dr. Stein's opinion does not appear to him to be supported by the record, a conclusory statement more akin to substituting

ORDER
PAGE -15

his own judgment for Dr. Stein's. AR 24. This is improper. *Gonzalez Perez v. Sec'y of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987).

### D. The ALJ Did Not Properly Consider Plaintiff's Testimony In His RFC Analysis.

Plaintiff argues that the ALJ's RFC analysis was in error because it implicitly rejected plaintiff's testimony regarding the extent of his pain. Dkt. No. 9 at 13. The Commissioner responds that the ALJ met the legal standard for finding the testimony less than credible. Dkt. No. 12 at 8.

According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expect to cause the claimant's symptoms. *Id.* at 9(a) and (b); SSR 96-7p, at *2. Next, the ALJ must evaluate the intensity and persistence of the claimant's symptoms in light of the entire record.[3] *Id.* at (c); SSR-96-7p, at *2. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998) (internal citations omitted) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Id.* In presenting these reasons, the ALJ must specifically identify what testimony

---

[3]SSR 96-7p lists at least seven factors that an adjudicator must consider when assessing the credibility of an individual's statements. They include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms [. . .]; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *3.

ORDER
PAGE -16

is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id.* (internal citations omitted).

In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain. *Id.* (internal citations omitted).

Here, the ALJ did not provide clear and convincing reasons to support his determination that plaintiff's testimony regarding his ability to work was "not entirely credible." AR 23-27. The ALJ acknowledged plaintiff's range of alleged impairments, but considered plaintiff's daily routine, which involves cooking, cleaning, managing his finances, visiting with friends, and taking public transportation, to be inconsistent with those impairments. AR 26, 43-47, 141-42. The ALJ also identified plaintiff's ability to return to work as inconsistent with his PTSD impairment. AR 26-27. These reasons do not rise to the level of clear and convincing evidence for the period of time at issue or to the PTSD impairment specifically. On remand, the ALJ will reconsider the adverse credibility determination relating to PTSD and fatigue in light of all the medical evidence.

E.      <u>The ALJ Failed to Consider Properly the VA's Disability Determination</u>

Plaintiff appears to argue that the ALJ failed to give weight to the VA's determination that he had a 50% disability due to depression and anxiety. Dkt. No. 9 at 15. He bases this argument on the absence of any explanation for the ALJ's rejection of the determination. *Id.* Defendant contends that the ALJ in fact incorporated the VA's determination into his decision. Dkt. No. 12 at 15.

The Ninth Circuit has determined that, because the Social Security and Veterans Affairs programs are so similar in structure, purpose, and evaluation methods, an ALJ is obligated to consider the VA's finding of disability when conducting his disability analysis. *McCartey*, 298 F.3d at 1076. Because the two programs are not identical, however, a VA's disability rating does not *require* the Social Security Administration to reach the same determination. *Id.* Rather, the ALJ is required to give "great weight" to a VA determination of disability and may only discount such evidence if he provides "persuasive, specific, valid reasons for doing so that are supported by the record. *Id.*

In this case, plaintiff testified that he received a 50% disability rating from the VA for "depression and anxiety," though there is no other evidence in the record to support this assertion. AR 42-43. The ALJ acknowledged plaintiff's testimony, but made no comment as to whether he adopted or rejected it. AR 25. Although the ALJ does not appear to have explicitly rejected this testimony, it does appear that he discounted it and was thus required to give "persuasive, specific, valid reasons for doing so that are supported by the record." On remand, the ALJ should address this issue specifically.

### VIII. CONCLUSION

This matter is reversed and remanded for further proceedings consistent with this Order.

DATED this 8th day of September, 2005.

JAMES P. DONOHUE
United States Magistrate Judge